## PUEBLO OF LAGUNA v. PUEBLO OF ACOMA.

FAILURE TO PLEAD STATUTE OF LIMITATIONS.—Where a party fails to plead the statute of limitations in the court below, he can not rely upon that defense in the appellate court, but will be deemed to have waived it.

OBJECTION TO PLAINTIFF'S RIGHT TO SUE.—The objection that a suit is not instituted in the name of the proper plaintiff can not be first raised in the appellate court.

OIL PAINTING OF SAN JOSE, OWNERSHIP OF.—The oil painting of San Jose, the patron saint of the pueblo of Acoma, left with them by the early conquerors, belongs to that pueblo, and not to the parish priest for the time being, nor to the pueblo of Laguna, and the former pueblo being deprived of its possession by the latter, are entitled to a decree restoring it to them, and need not sue in the name of the parish priest.

APPEAL from the district court of the second judicial district for the county of Valencia. The facts appear from the opinion.

*Baird and Smith*, for the appellants.

*M. Ashurst*, for the appellee.

By Court, DEAVENPORT, C. J.:

This interesting and novel case originated in the district court of the second judicial district of this territory, in the county of Valencia, and was tried before the Hon. Kirby Benedict, associate justice of this court, and judge of said district, sitting on the chancery side of said court. The pueblo of Acoma filed their bill in chancery against the pueblo of Laguna, setting forth that in years past, but how long is unknown, the pueblo of Acoma was established, and had been hitherto known by that name; that on the establishment of said pueblo, San Jose (St. Joseph) was constituted patron saint, and has for many years so continued; that after the establishment of said pueblo and the dedication thereof to San Jose, a full life-size oil painting upon cloth or linen, was placed in the Catholic church erected and dedicated to God, and the holy Catholic church, and San Jose as aforesaid; that said painting is an object of peculiar affection to the people of said pueblo, and by their religion rendered almost indispensable in their worship of almighty God, and, in fact, of such peculiar interest that it

can not be compensated for in any other way; that the pueblo of Laguna some years past, but within the memory of persons now living, under pretense of a loan, borrowed said painting of the pueblo of Acoma for the purpose of celebrating holy week *(semana santa)*, then approaching; that the said pueblo of Laguna having so obtained possession of said painting, they set up a claim to it, and refused to return the same to them. The pueblo of Acoma aver that said pretended claim was false, and that their pretended borrowing of the painting was a fraud practiced upon them to cheat them out of said painting; that the pueblo of Acoma therupon sought relief from the ecclesiastical authorities in the premises, who were conceived at that time to have authority and jurisdiction over the subject-matter. Thereupon the priest or *cura* in charge of the spiritual welfare of the pueblo of Acoma at that time, directed the painting to be returned to the pueblo of Acoma, and cited or caused the two pueblos to appear before him at Acoma, and that for the final settlement of the question as to the right and possession of said painting, he proposed to said pueblos that they in prayer fervently and earnestly call on God and the saint, that they cause right and justice to prevail in the matter. To which proposition the two pueblos most cordially agreed, and having worshiped God and the saint as aforesaid in accordance with their agreement, under the direction and supervision of the *cura*, they cast lots for said painting, and, as complainants were induced to believe, God and the saint decided that said painting did, and should, belong to the pueblo of Acoma. In which said decision complainants allege that the said *cura* also concurred, with which decision they hoped all parties would remain satisfied, but that the pueblo of Laguna, wholly disregarding the decision thus solemnly made and sanctioned by the priest, returned the same day in strong numbers, and with arms in hand approached the door of the church and threatened to break it down if the said painting was not given to them; that the pueblo of Acoma, being weak and powerless against the strength of the Lagunians, were induced by the threats of the pueblo of Laguna, un-

der the advice of the *cura*, to avoid bloodshed, to deliver the said painting to the said Lagunians, who have hitherto retained it against the wishes and consent of complainants.

The above embrace all the allegations useful to a full understanding of the case, so far as the action of this court is involved. The other allegations as to the apostasy of the pueblo of Laguna from the true Catholic faith and their revilement of the saints were charged to base a prayer to the chancellor that he should appoint a receiver to take charge of the painting until the cause should be finally adjudged and decreed. The pueblo of Laguna say that they know nothing of the origin of said painting of San Jose except from the tradition of their old men, handed down for several generations past, and such tradition clearly and conclusively establishes the right of said pueblo of Laguna to said painting of San Jose, and manifests clearly that the same is the property of the pueblo of Laguna and rightfully belongs to them. It is said and universally believed that, after the conquest of this country by Spain, a bishop gave the painting of San Jose to the pueblo of Laguna, and that said painting was by the pueblo of Acoma clandestinely taken from them, and they went peaceably to reclaim it, and the pueblo of Acoma refused to surrender it, and thereupon a Catholic priest proposed they should draw lots for it, to which proposition the pueblo of Acoma consented, but they refused, and, knowing their title to said painting, took it from the said pueblo, as they had a right to do, and have ever since that time continued to keep, use, and claim it as their own up to the institution of this suit.

This is deemed a sufficient statement of the answer, as the balance of it contains denials of the allegations of the bill. At a subsequent day this cause was set for hearing on bill, answer, and proofs in the court below. The chancellor, after having heard both parties, entered up a decree in favor of the complainants in the premises, from which decree the defendants prayed an appeal to this court, which was allowed. The appellants assign only one ground of error in this case, that the district court erred in rendering a decree for the appellees when the same should

have been rendered for the appellants. Counsel for appellants in this court does not contend that upon the evidence the decree is not sustained, but virtually admits its correctness so far as the proofs in the case are concerned. But questions of law are here raised in argument which were not made nor relied upon in the court below. It is contended in argument that complainants are barred by the statute of limitations, and for that reason the decree should not have been for complainants. On this point it is laid down in Angell on Limitations, p. 313, that "if the defendant intends to insist upon the statute of limitations, (though he may waive it if he chooses), he should plead it to prevent surprise, and if he does not do so, it is presumed he intends to waive it." In this case no such plea was made. It is also contended that said decree was improperly rendered, because the pueblo of Acoma were not the proper parties to the bill; but that the suit should have been instituted and carried on in the name of the parish priest for the time being. In the court below no objections were made to the parties suing, neither were there any suggestions made that there was any parish priest interested in the said painting.

Apart from the statute of this territory, which provides that no exception shall be taken in an appeal to any proceeding in the circuit court, except such as have been expressly decided in that court (Rev. Code, p. 114, sec. 5), it can be abundantly shown from the evidence in this case, that this painting was not the property of any priest. The first witness, Quanico, introduced by the complainants, proves conclusively that Vicario Ortiz recognized the San Jose as belonging to the pueblo of Acoma. He also testifies that priest Lopez, in company with Margarita Herdandez, went to the pueblo of Acoma and the next day the principal men of Laguna arrived there, Luis Saraceno also being with them. That the priest ordered the governor of Acoma to be called, with the chiefs, to hear the subject of the saint. He (the priest) ordered all the families to worship and hear mass. He then ordered the principal men of both pueblos to meet together in a room, and after they

had gone, the priest then left for another room, in company with Luis Saraceno and Margarita; but they returned shortly afterwards to where the others were. The priest then proposed that after breakfast they should draw lots for San Jose. They then went to the temple, where a vessel was placed in which were the lots, covered with a white cloth. Two little girls were then placed on the table, on each side of the vessel, and then Luis Saraceno and Margarita acted for Laguna and the priest for Acoma. The girls then commenced drawing out the lots. There were twelve lots, all blank but one, and that one had on it the picture of San Jose. The priest called the lots. The first, second, third, and fourth tickets were blank, and on the fifth the ticket with the picture of San Jose on it was drawn by Acoma, and then the priest declared that God had decided the case, and the Lagunians proposed returning to Laguna.

There is sufficient evidence that said painting was in controversy between these two pueblos, and instead of the priest setting up any claim to it, he declares that God had decided the case, and that it belonged to the pueblo of Acoma. The same witness continues: The Lagunians then left, but most of them remained. At that time the Lagunians were encamped at the Agua Escuridad, and from thence they came the same day to attack Acoma. Francisco P——, a member of the pueblo of Acoma, and witness, were at the church door when they came, and asked them their business, and they said they had come for the saint, and threatened to break the door if it was not delivered. The priest then asked what was to be done, and advised the Acomas to give up the saint. The priest was afraid of the Lagunians and delivered the saint to them, and the Lagunians took it away. The priest, after the Lagunians took the saint away, said to them not to mourn for the saint, that he would get another from Mexico. In another portion of his testimony the witness says: The saint was left by the early conquerors to the pueblo of Acoma, and is of great value to them, is the patron saint of Acoma, and he believes in the saint as the guardian and patron saint of Acoma, and its place can not be supplied

with another one, and he believes that in order to prevail with God it is necessary to have San Jose in Acoma. Another witness, Antonio Casique, says that the saint was brought to Acoma by a king, Vicente; that it was placed in the church at the time of the second conquest.

From the above testimony it is clearly deducible that said painting is an object of great veneration to the pueblo of Acoma, as well from its supposed spiritual protecting patronage, as its high antiquity among them. That it belonged to them as a pueblo is also clearly deducible from the evidence. That it did not belong to any parish priest is demonstrable from the circumstance that no such claim was ever set up, or pretended to be set up, in all the controversies touching the painting between the two pueblos. The priest interfered only to compromise the dispute between the two contending pueblos concerning it, and on one occasion at the drawing of the lots, declared that God had directed that San Jose belonged to Acoma. Then it is clear that the court below committed no error in not requiring the Spanish priest for the time being to be made a party to this suit.

Having disposed of all the points which counsel for appellants raised in argument against the decree below, the court deems it not improper to indulge in some reflections on this interesting case. The history of this painting, its obscure origin, its age, and the fierce contest which these two Indian pueblos have carried on, bespeak the inappreciable value which was placed upon it. The intrinsic value of the oil, paint, and cloth upon which San Jose is represented to the senses, it has been admitted in argument, probably would not amount to two bits; but this seemingly worthless painting has well-nigh cost these two pueblos a bloody and cruel struggle, and had it not been for weakness on the part of one of the pueblos, its history might have been written in blood. Such is his appreciative value, that one witness swore that unless San Jose is in Acoma the people thereof can not prevail with God. All these supposed virtues and attributes appertaining to this saint, in the belief of these people, and the belief that the

throne of God can only be successfully approached through San Jose, have contributed to make this a case of deep interest, involving a portraiture of the feelings, passions, and character of these peculiar people.

Let the decree below be affirmed.